Jenna Dakroub, CA #350170
E: jdakroub@consumerattorneys.com
*Attorney for Plaintiff John Doe*
CONSUMER ATTORNEYS
6345 Balboa Boulevard, Suite 247
Encino, CA 91316
T: (602) 807-1525
F: (718) 715-1750

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| JOHN DOE on Behalf of Himself and Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>YARDI SYSTEMS, INC., RENTGROW, INC., and CLEARA, LLC.<br><br>Defendants. | **Case No.:** 2:23-cv-10118<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1.   **FCRA, 15 U.S.C. § 1681, *et seq.*** |

## COMPLAINT

Plaintiff John Doe ("Plaintiff"), on behalf of himself and all similarly situated individuals, brings this case as a class action based on violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681i, against Defendants RentGrow Inc., ("RentGrow"), Yardi Systems, Inc. ("Yardi"), and an individual claim against

1

RentGrow, Yardi, and Cleara, LLC., ("Cleara")(together, "Defendants") for violations of 15 U.S.C. 1681e(b).  Trial by jury is demanded.

## **INTRODUCTION**

1.     When the Plaintiff applied for an apartment, he was denied housing when the landlord obtained a tenant screening consumer report from RentGrow, a consumer reporting agency wholly owned and controlled by Yardi.

2.     The report contained sex offender information about the Plaintiff that the California Supreme Court determined to be unreportable more than a decade earlier and, thus, was inaccurate in 2023 when RentGrow reported it to Plaintiff's prospective landlord.

3.     It was illegal for RentGrow to report the sex offender information on Plaintiff's report in the first place, which was made worse when Plaintiff disputed the information to RentGrow and it refused to conduct a reinvestigation unless the Plaintiff first completed a proprietary form.

4.     Upon information and belief, RentGrow obtained the sex offender information from Cleara, a third party vendor of criminal public record information that has an agreement to provide such consumer reporting information to RentGrow for use in consumer reports in accordance with its standard practices.

5.    Stalling or refusing a reinvestigation and failing to forward a dispute to the furnisher of criminal public record information by requiring a consumer to first complete a proprietary form is a well-established violation of the Fair Credit Reporting Act ("FCRA").

6.    The FCRA is a remedial statute that must be liberally construed.

7.    Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it regulates all "consumer reports." 15 U.S.C. § 1681(a)(d).

8.    In the parlance of the FCRA, tenant screening reports and background checks are "consumer reports."

9.    The FCRA provides a number of protections for applicants who are subject to tenant screening and background reports.

10.    The FCRA imposes duties on consumer reporting agencies, like Defendant, to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

11.    Under 15 U.S.C. § 1681e(b), "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

12.    The FCRA provisions at issue in this case are akin to the common law causes of action of defamation and invasion of privacy.

13.    This action seeks class relief for all consumers that have been subjected to RentGrow's illegal conduct in failing to conduct a prompt reinvestigation, as well as an individual action for failure to follow reasonable procedures to assure the maximum possible accuracy of information before publishing that the Plaintiff was a sex offender.

14.    This action seeks statutory and punitive damages, costs, and attorneys' fees for the class for violations of 15 U.S.C. 1681i.

15.    This action seeks actual, statutory and punitive damages, costs, and attorneys' fees for the Plaintiff individually for violations of 15 U.S.C. 1681e(b).

16.    Under the FCRA, when a consumer disputes the accuracy of an item of information to a consumer reporting agency (CRA), the CRA is required to promptly conduct a reasonable reinvestigation and also to send the dispute to the furnisher of the adverse information.

17.    CRAs must treat all disputes as *bona fide*.

18.    Defendants knew or should have known that they must treat Plaintiff's dispute as *bona fide*.

19.    Under 1681e(b), a CRA is liable if it fails to use reasonable procedures to assure maximum possible accuracy about information in the consumer's report before publishing it to a third party.

20.    Upon information and belief, RentGrow received the sex offender information about the Plaintiff from a Cleara, or other third party.

21.    RentGrow did nothing to ensure the Cleara or third-party information it published about the Plaintiff was accurate before publishing it to the Plaintiff's prospective landlord.

22.    RentGrow has been sued many times for relying on such information from its third-party suppliers, and thus it knows that the criminal history information it receives from third-parties are prone to inaccuracies that are harmful to consumers.

23.    Despite this knowledge, RentGrow has not adapted its procedures to avoid publishing inaccurate information supplied by third parties.

24.    RentGrow is on notice that criminal record information, including sex offender information, obtained from electronic court records is not reliable unless the information is checked against the original court records.

25.    Most courts that provide electronic access to court records, including California courts, disclaim accuracy and warn users that the information is not warranted as accurate, complete, or timely.

26.    Upon information and belief, most contracts between states and public records vendors used by RentGrow contain similar disclaimers that information is accurate, complete, or up to date.

27.    Upon information and belief, Cleara's agreements to obtain State of California criminal public records, as well as sex offender public records from other jurisdictions, all contain disclaimers that the information is accurate, complete, or up to date.

28.    RentGrow and Cleara knew or should have known that inaccurate sex offender information makes it nearly impossible for a consumer to obtain rental housing in an apartment complex.

29.    Had RentGrow or Cleara even performed a cursory search of the California public records, it would have discovered no underlying sex offender records existed in California.

30.    Despite this knowledge, Cleara published to RentGrow, and RentGrow in turn published sex offender information about the Plaintiff without verifying its accuracy with the California court and sex offender records.

31.    Under 15 U.S.C. 1681i, as soon as RentGrow received a dispute from Mr. Doe, it should have transmitted the dispute to the furnisher of the sex offender records and commenced its own reinvestigation of the disputed information.

32.    In a matter of minutes, if not seconds, RentGrow could have determined that there were no reportable sex offender records in California concerning the Plaintiff.

33.    Instead of commencing a reinvestigation, RentGrow decided to send the Plaintiff a special form to be completed before it would fulfill its obligations under § 1681i.

34.    The only time that a CRA may terminate a reinvestigation is when it determines that the dispute is frivolous or irrelevant, which is not applicable on these facts.

35.    The Consumer Financial Protection Bureau (CFPB) is the federal regulatory agency with jurisdiction over the implementation of the FCRA. Prior to the CFPB, the Federal Trade Commission was tasked with regulatory authority.

36.    The CFPB has issued specific guidance to consumer reporting agencies, including Defendants, that it is a violation to require consumers to use a special form before commencing a reinvestigation and sending the dispute information to the furnisher. Prior to the CFPB, the FTC issued similar guidance.

## **JURISDICTION**

37.    This Court has federal question jurisdiction because this action arises out of violations of federal law. 28 U.S.C. § 1331, 15 U.S.C. § 1681 et seq (FCRA).

38.    Venue is proper in the Western Division of Central District of California pursuant to 28 U.S.C. § 1391(b)(1) because Defendants regularly transact business within this District, is otherwise subject to personal jurisdiction in this District, and under § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District and Division.

## PARTIES

39.    Plaintiff John Doe is a natural person, formerly a citizen of California and who is currently residing with family in Oklahoma.

40.    Plaintiff is a consumer as defined by the FCRA, 15 U.S.C. §1681a(c).

41.    Defendant RentGrow is a consumer reporting agency, as defined in 15 U.S.C. § 1681a(f).

42.    On information and belief, RentGrow is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties, such as banks, credit unions, or merchants.

43.    RentGrow has a principal place of business is located at 400 Fifth Avenue,  Suite 120, Waltham, MA 02451, and its registered agent in Boston is Corporation Service Company located at 84 State Street, Boston, MA 02109.

44.    Upon information and belief, RentGrow disburses consumer reports to third parties for monetary compensation.

45.    RentGrow describes itself as a wholly owned subsidiary of Yardi Systems, Inc., which provides resident screening services to property owners and managers "which may include your credit history, rental history and other publicly reportable civil or criminal records, if any."

46.    At all relevant times, RentGrow acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

47.    Defendant Yardi is a consumer reporting agency, as defined in 15 U.S.C. § 1681a(f). On information and belief, Yardi is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties, such as banks, credit unions, governmental entities, landlords, or merchants.

48.    Yardi's principal place of business is located at 430 S. Fairview Ave, Santa Barbara, CA 93117 and its registered agent in California is California Registered Corporate Agent (1505) CSC - Lawyers Incorporating Service Registered Corporate 1505 Agent located at 2710 Gateway Oaks Drive, Sacramento, CA 95833.

49.    Upon information and belief, Defendants disburse consumer reports to third parties for monetary compensation.

50.    Yardi describes itself as a software company, but has for many years operated as a consumer reporting agency through various products and services including, for example, Yardi Resident Screening, Screening Works Pro, and RentGrow.

51.    In or about July 19, 2017, Yardi issued the following "Resident Screening Client Notification"

> To better differentiate between our resident screening services and our traditional property management software, Yardi Resident Screening will become ScreeningWorks PRO on September 7, 2017.
>
> What this means for Yardi clients:
> After September 7, you will see ScreeningWorks PRO as the product name on Yardi materials, within the screening software interface, on your screening reports and elsewhere. In other words, everywhere you currently see Yardi Resident Screening or YRS will become ScreeningWorks PRO after the switch.
>
> What this means for prospective renters:
> Consumer-facing screening activities will continue to be administered by RentGrow, which is (and has always been) a wholly owned subsidiary of Yardi Systems, Inc. However, RentGrow will no longer be doing business as Yardi Resident Screening. This means "RentGrow" will replace "RentGrow, Inc. doing business as Yardi Resident Screening" and "YRS" on everything your tenant applicants receive from us including tenant screening reports, adverse action letters, the emails and other information we send to consumers, and on our consumer-facing website. Similarly, our Consumer Relations team, which processes applicant disputes and related inquiries, will identify themselves as RentGrow to consumers who call us directly.

If you have any questions, please contact your Account Manager or Customer Service at (800) 736-8476 and choose option 1.

Thank you!

RentGrow, Inc. dba Yardi Resident Screening
400 Fifth Avenue Suite 120 | Waltham, MA 02451
tel 800.736.8476 | fax 800.819.5182 | www.yardi.com

52.     Both Yardi and RentGrow have the same President, Chief Executive Officer, and Chief Financial Officer, Anant Yardi.

53.     Upon information and belief, Anant Yardi directs the conduct of both RentGrow and Yardi as if they are one and the same.

54.     Both Yardi and RentGrow share executives and board members Jay Shobe and Laurie Diaz.

55.     There are Yardi employees who physically work at RentGrow offices, such as Patrick Hennessey.

56.     Upon information and belief, Yardi holds itself out as a consumer reporting agency.

57.     Yardi's data center is physically located within the geographic boundaries of the Central District of California.

58.     RentGrow's registered agent with the U.S. Copyright Office is Jill Smith, Yardi Systems, Inc., 430 S. Fairview Avenue, Santa Barbara, CA, 93117, phone 805-699-2040.

59.    Yardi ScreeningPro and RentGrow consumer reports are practically identical.

60.    Upon information and belief, Yardi and RentGrow consumer reports utilize the same servers, databases, third-party vendors, and Yardi Voyager PHA platform.

61.    At all relevant times, Defendants acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

62.    Defendants' violations were not made in good faith conduct of their business but were made intentionally or in reckless disregard of the Plaintiff's rights because Defendant did not maintain procedures reasonably adapted to avoid any such violation.

63.    Reference to either Defendant in the singular includes both Defendants because the control, direction, ownership, systems, and practical reality is that Yardi and RentGrow act in concert and as one and the same.

64.    Cleara, LLC is a Pennsylvania Corporation with a principal place of business in Hagerstown, MD.  Cleara obtains criminal public records from the State of California for the purpose of gathering and selling such consumer reporting information about consumers who were or are residents of California.

65.    Cleara markets itself as a provider of "background screening data you can trust" primarily for employment, tenant and volunteer screening.

66.    Cleara is a consumer reporting agency as that term is defined in the FCRA, that sells consumer reporting information to consumer reporting agencies such as RentGrow, who then use the Cleara consumer report by repackaging it with other consumer information that it sells to additional users such as the landlord in this case.

67.    Cleara is "proud to work with the top industry associations" including PBSA, the Professional Background Screening Association, and NAA, the National Apartment Association.

68.    Cleara markets itself as having leadership with "over 85 years" of combined experience, with officers who are members of the PBSA and the National Consumer Reporting Association.

69.    Cleara's officers have decades of experience working for other consumer reporting agencies such as First Advantage, Core Logic, SafeRent, Trans Union, Experian, Innovative Enterprises, Appriss, RealPage.

70.    Cleara markets its Non-registered database (NRD), so their customers can "identify individuals who show up 'clean' in conventional databases, and actively sells itself as locating "offenders who have not been reported through traditional county, federal and national Sex Offender Registry (SOR) databases."

71.    Cleara also applies AI-based Cognitive Screening to "expertly search[es] over 250 million news articles, social media and other unstructured records to identify information and additional data points."

72.    Cleara's traditional criminal records search products include "Nat-Crim Multi-State Instant Criminal Search," "Nationwide Sex Offender Search," "County/State Criminal Records Searches," among other products.

73.    Cleara gathered, compiled, and reported information about the Plaintiff from California records, that had an effect on Plaintiff outside of California. However, Cleara voluntarily directed its violative conduct to and in California.

## STATEMENT OF FACTS

74.    Mr. Doe was denied housing based on erroneous and harmful sex offender information that RentGrow published about him in a tenant screening consumer report it sold to Silver Creek apartments in Tulsa, Oklahoma.

75.    When Mr. Doe was 13 years old, he was a juvenile who was charged with an offense in California.

76.    The court records no longer exist, so it is not possible to ascertain what charges were brought or the result of any adjudication.

77.    However, due to the Supreme Court of California's decision *In re: C.H.,* 53 Ca. 4th 94 (2011), the Attorney General of California determined Mr. Doe was not

subject to sex offender registration and terminated the requirement pursuant to California law as of April 6, 2012.

78.    The Attorney General of California sent notice of this decision to the Plaintiff. (Ex. 1).

79.    The State of California does not have Plaintiff listed as a sex offender.

80.    Any state sex offender registry that listed Plaintiff as a sex offender based on a California record did so falsely.

81.    Furthermore, there is no record of the charge or conviction anywhere in California's public records.

82.    In or about March 21, 2023, Plaintiff applied to rent an apartment at Silver Creek in Tulsa, Oklahoma.

83.     The apartment company contracts with RentGrow to provide consumer reports, also called tenant screening or background reports, about potential tenants.

84.    Upon information and belief, Yardi and/or RentGrow obtained the criminal public records information from Cleara, which Yardi and/or RentGrow then repackaged the consumer information with other consumer reporting information as a RentGrow tenant screening consumer report.

85.    RentGrow sold that tenant screening consumer report about Mr. Doe to Silver Creek on or about March 21, 2023.

86.    The consumer report contained erroneous sex offender information about Mr. Doe, which caused Silver Creek to refuse to rent him an apartment.

87.    Upon information and belief, RentGrow obtains criminal record and sex offender information from Cleara and other third-party vendors, and not from the original jurisdiction.

88.    The original jurisdiction to obtain criminal information, including sex offender information, in this case is the State of California.

89.    On or around October 2, 2023, Mr. Doe personally and directly emailed a written dispute to the Defendant regarding the inaccurate report Defendant provided to Silver Creek via email to RentGrow's email address.

90.    In this written dispute, Mr. Doe provided his full name, address, telephone number, date of birth and his social security number.

91.    He also included a copy of his government-issued identification as proof of his identity and a copy of the letter from the Attorney General of California demonstrating he was not subject to sex offender registration.

92.    Instead of promptly commencing a reinvestigation of the dispute and correcting the erroneous information in his tenant screening report, RentGrow refused to reinvestigate unless Mr. Doe completed a special form and returned it to RentGrow. A copy of this correspondence is attached. (Ex.2)

93.    RentGrow is on specific notice due to multiple lawsuits, including class actions that have been filed against consumer reporting agencies for this very conduct, failing to conduct a reasonable reinvestigation of erroneous information collected from a third party without first ensuring that the information was maximally accurate.

94.    Since at least 1990, the FTC has made clear that a CRA's obligation to investigate a disputed item cannot be made contingent upon any special requirements other than submission of a dispute.

95.    RentGrow knows that it is a consumer reporting agency governed by the FCRA, which FCRA information appears on its "Frequently Asked Questions" page of its website.

96.    The Yardi website's FCRA dispute information FAQ states that "Yardi maintains a robust applicant-friendly webpage" which includes a link to directs consumers to the RentGrow website for "a wealth of important and helpful information for applicants." https://www.yardi.com/products/resident-screening/support-links/customer-support/ and https://www.rentgrow.com/last visited October 31, 2023.

97.    Instead of implementing and following procedures reasonably likely to address erroneous sex offender information from appearing in its reports, RentGrow blindly reports information it receives from Cleara and other third parties without

ensuring that the information is maximally accurate or ensuring that Cleara's or other third party's supplier's procedures are designed to assure maximum possible accuracy.

98.    RentGrow is also on express notice that the United States Department of Justice *disclaims* that the information on the National sex offender registry is accurate, complete, or up to date. "the Department makes no claims, promises, or guarantees about the accuracy, completeness, or adequacy of the contents of this site."

99.    Cleara is also on express notice that the United States Department of Justice *disclaims* that the information on the National sex offender registry is accurate, complete, or up to date. "the Department makes no claims, promises, or guarantees about the accuracy, completeness, or adequacy of the contents of this site."

100.    RentGrow is on notice that it should not publish sex offender registry information unless it consults court records from the originating jurisdiction.

101.    Cleara is on notice that it should not publish sex offender registry information unless it consults court records from the originating jurisdiction.

102.    Cleara specifically markets its ability to obtain criminal record and sex offender consumer information that isn't available in public records or sex offender

registries, therefore it runs a greater risk of publishing false or illegal information about consumers.

103.   Upon information and belief, Cleara provided consumer information, including the criminal records at issue in this case, based on Cleara's own database and records and its public records searches.

104.   Cleara represents on its website that its "modern approach" "combines billions of records searched without own proprietary data, innovative processes utilizing machine learning and artificial intelligence."

105.   Further, Cleara proclaims on its website that it relates to the provision of criminal records, it maintains the most powerful "multi-state, multi-jurisdictional, multi-county search in the industry consisting of over 1,000 unique sources and 650 records."

106.   Yet, despite Cleara's public-facing marketing representations, Cleara reported Plaintiff as a sex offender despite the fact that records were (i) juvenile records, (ii) that were determined by the California Supreme Court and Attorney General to not be reportable more than a decade earlier, (iii) the underlying court records did not even exist at the time Cleara sold the Plaintiff's consumer information to RentGrow.

107.   Cleara has a public-facing marketing plan that allows it to gather, compile and sell consumer reports containing criminal record information that are not public and, in the case of the Plaintiff, based on criminal records that do not exist.

108.   As a result, Cleara does not follow reasonable procedures to assure that the consumer information it sells to other CRAs is maximally accurate.

109.   Upon information and belief, because RentGrow did not promptly commence a reinvestigation, it did not provide the dispute to Cleara or other third-party furnisher of criminal public records and sex offender records.

110.   Upon information and belief, RentGrow did not supply all relevant information regarding the dispute that it received from the consumer to Cleara or other third-party furnisher of criminal public records and sex offender records.

111.   Had RentGrow done the bare minimum of checking publicly available records, it would have discovered that there are no California, Texas, or other criminal public records that justify the sex offender registration under Plaintiff's name.

112.   Before it would commence a reinvestigation, RentGrow required Mr. Doe to submit a special form, along with a copy of his government-issued identification such as driver's license, which identification he already provided.

113.   RentGrow informed Mr. Doe that it would not process the dispute unless he provided information and documentation he had already provided,

including: Full name, social security number, Date of birth and A copy of government issued identification card such as driver's license.

114.   Upon information and belief, any consumer that sends a dispute to Yardi is also first required to complete a proprietary form that is the same or similar to the form required by RentGrow.

115.   Yardi and RentGrow Defendants have been expressly on notice that they may not delay or avoid conducting a reinvestigation by requiring a consumer to first fill out a form by the plain language of the statute.

116.   The Consumer Financial Protection Bureau (CFPB) has issued a circular with direct application to the Defendants' use of a specialized form, calling it an "obstacle that deter(s) submission of disputes" in Circular 2022-07.

117.   CFPB Circular 2022-07 specifically provides that "requiring any specific format or requiring any specific attachment such as a copy of a police report or consumer report beyond what the statute and regulations permit" violates the FCRA.

118.   CFPB Circular 2022-07 specifically states that it is illegal for the CRA such as Defendants to "evade the obligation to investigate disputes by requiring consumers to submit particular items" including "a completed proprietary form before investigating the consumer's dispute."

119.   CFPB Circular specifically provides that it is a violation of the FCRA when a CRA fails to promptly provide to the furnisher "all relevant information" regarding the dispute that the CRA receives from the consumer.

120.   Even before the issuance of the CFPB Circular, Yardi and RentGrow Defendants knew or should have known that erecting such obstacles in order to delay or avoid their duties under 1681i, violated the statute.

121.   Because the Yardi and RentGrow Defendants knew or should have known their conduct violated the FCRA, and its intent and/or effect deprives consumers of their right to a reinvestigation by the CRA, investigation by the furnishers, and ultimate correction of the inaccurate information in order to assure maximum possible accuracy of the information reported about the Plaintiff and the putative class.

122.   Upon information and belief, Yardi and RentGrow Defendants do not make money by processing disputes from customers.

123.   In fact, reinvestigating disputes is purely an expense for Defendants. As a result, it is in Defendants' pecuniary interest to reject disputes for any possible reason, because doing so saves money.

124.   Upon information and belief, Yardi and RentGrow Defendants treated Mr. Doe the same way that it treated all consumers who disputed the accuracy of their consumer reports during the class period.

125.   Upon information and belief, Yardi and RentGrow Defendants did not make a mistake when they responded to the Plaintiff's dispute by requesting a special form be completed first in accordance with their policies and procedures.

126.   Yardi and RentGrow Defendants followed their policies and procedures in responding to Mr. Doe's dispute.

127.   Yardi and RentGrow Defendants followed their policies and procedures in the preparation of Mr. Doe's consumer report.

128.   Yardi and RentGrow Defendants did not make a mistake when they included the sex offender information regarding the Plaintiff in the consumer report they sold to Silver Creek in accordance with their policies and procedures.

129.   Plaintiff was denied the apartment at Silver Creek due to inaccurate credit report as a direct result of the inaccurate RentGrow report.

130.   Not only that, but Plaintiff was deprived of his right to have his *bona fide* dispute promptly reinvestigated by Yardi and RentGrow and forwarded to the furnisher of the inaccurate information by placing an illegal barrier to complete a form first.

131.   As a direct result of Yardi and RentGrow Defendants action and inaction described in this Class Action Complaint, Plaintiff has suffered loss of housing, physical injuries and sickness resulting from emotional distress and mental anguish of sex offender registry information appearing on his consumer report, this

information being transmitted to a prospective landlord, being the object of ridicule, being prevented and discouraged from seeking correction of the report, lost time, money, and labor spent on correcting the inaccuracy in vain. These are unique injuries for which the Plaintiff seeks individual relief for the Yardi, RentGrow and Cleara Defendants' failure to follow reasonable procedures to assure the maximum possible accuracy of the sex offender information before publishing it to a third party.

132.    Plaintiff has suffered injuries resulting in actual damages from Defendants' RentGrow's and Yardi's failure to promptly reinvestigate his dispute and send it to the furnisher, but the Plaintiff has elected to forego such damages in order to seek statutory and punitive damages on behalf of the class.  These injuries are the same injuries suffered by each member of the class.

133.    The Yardi and RentGrow Defendants' conduct is the very conduct that Congress sought to curb when it enacted the FCRA.

134.    The shirking of Defendants' statutory mandates is exactly the conduct that the CFPB Circular addressed.

135.    The injuries suffered by Plaintiff and the putative class are the injuries that Congress sought to address and remedy when enacting the FCRA, including its statutory damages, punitive damages, and fee-shifting provisions.

136.    In the alternative, all Defendants' conduct was negligent in the preparation and publication of the Plaintiff's consumer report.

137.   In the alternative, Yardi and RentGrow Defendants' conduct was negligent in the reinvestigation of the Plaintiff's dispute.

## **CLASS ALLEGATIONS**

138.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Plaintiff brings this action for himself and on behalf of the following class:

> All Natural persons in the United States who (a) made a request to RentGrow or Yardi to investigate alleged inaccuracies on their consumer report, (b) within the two-year period preceding the filing of this action and through class certification, and (c) to whom RentGrow or Yardi responded requiring completion of a form the same as or substantially similar to Ex. 1 filed with this Complaint.

139.   **Numerosity: Fed. R. Civ. P. 23(a)(1)**.   Defendants operate a large, multinational, tenant screening enterprise designed to quickly generate consumer reports. Because of Defendants size, number of customers, and likely number of consumers about whom it collects, maintains and sells consumer information, the number of class members likely exceeds 50 individuals. Therefore, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, including email addresses, phone numbers, and postal addresses. The class members may be notified of the pendency of this action through mail and/or email.

140.    **Common Questions of Law or Fact: Fed. R. Civ. P. 23(a)(2) & 23(b)(3)**. Common questions of both law and fact exist as to all members of each putative class. The common factual and legal issues predominate over any potential individual issues. The questions that predominate over questions affecting only individual class members include but are not limited to: (a) whether Plaintiff and each putative class member were requested to submit an additional form in response to their dispute under 15 U.S.C. § 1681i ; (b) whether Plaintiff's dispute was *bona fide*; (c) whether Defendants failed to promptly transmit the dispute to the furnisher of such disputed information, (d) whether the Defendants' failed to promptly commence a reinvestigation; (e) whether the Defendants' reading of their FCRA reinvestigation obligations was objectively reasonable; and (f) whether Defendants' violations were negligent, reckless, knowing or intentionally committed in disregard for the rights of the Plaintiff and putative class members; (g) whether Defendants' conduct was applied to all members of the class; (h) .

141.    **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each putative class member. Although the claims of the Plaintiff and class members do not need to be identical, in this case, the Plaintiff's claims are identical to the putative class members. Defendant RentGrow requested the Plaintiff and each class member to submit a form in addition to their dispute letter, which mandated

reasonable investigation, in direct violation of the FCRA. The Plaintiff's claim and the class member's claims are based on the same facts and legal theories.

142. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Both Plaintiff and his counsel are adequate to represent the interests of the class. Plaintiff's interests are coincidental, and are not antagonistic, to the interest of the class members. Plaintiff has retained experienced counsel who are competent in both class action litigation and the Fair Credit Reporting Act. Neither Plaintiff nor counsel have interests that prevent vigorous prosecution of the case on behalf of the class.

143. **Superiority and Predominance. Fed. R. Civ. P 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be next to impossible for all class members to each find a lawyer and afford individual litigation. Individualized litigation presents the possibility for inconsistent outcomes and contradictory judgments, increases delay and expense to all parties and to the courts. By contrast, the class action device will result in substantial benefits to the litigants and efficiency for the Court by allowing the Court to resolve numerous individual claims based on a single set of proofs.

## COUNT I

### Violation of 15 U.S.C. 1681i(a)(1)(A)
### Class Claim for failure to Conduct a Reasonable Reinvestigation against Yardi and RentGrow

144.   Plaintiff relies on the foregoing factual allegations that form the basis of the complaint against Defendants for violation of their duties to conduct a reasonable reinvestigation of the Plaintiff's dispute.

145.   Defendants were required to treat the Plaintiff's dispute as a bona fide dispute and promptly commence a reinvestigation.

146.   Instead, Defendants responded to the Plaintiff that he had to complete a proprietary form.

147.   Defendants knowingly or recklessly implemented and followed the procedure to delay or deny the Plaintiff's right to a reasonable reinvestigation in order to save money for itself.

148.   Defendants were on actual notice that their policy and procedure violated the FCRA, yet chose to implement the illegal policy anyway.

149.   Defendants conduct injured the Plaintiff and the putative class by depriving them of their right to a prompt, reasonable reinvestigation by the CRA, thus also depriving them of an investigation by the Furnisher.

150.   Defendants conduct was willful because it was in direct contravention of the express requirements of the FCRA, as well as FTC and CFPB guidance.

151.    Defendants are liable to the Plaintiff and putative class for statutory damages of between $100-1000 for each occasion on which Defendants failed to promptly conduct a reasonable reinvestigation by requesting the consumer first complete its proprietary dispute form.

152.    Defendants are liable for punitive damages, which are uncapped, for their willful violations.

153.    In the alternative, Defendants are liable to Plaintiff and the putative class for its negligent violations of the statute, entitling them to actual damages.

154.    Defendants are liable to the Plaintiff and the putative class for reasonable attorneys' fees and costs.

## COUNT II
### Violation of 15 U.S.C. 1681i(a)(2)
### Class Claim for failure to Forward the Plaintiff's Dispute to Furnisher
### Against Yardi and RentGrow

155.    Plaintiff relies on the foregoing factual allegations that form the basis of the complaint against Defendants for violation of their duties to promptly forward the Plaintiff's dispute and all relevant information to the furnisher of the criminal sex offender information.

156.    Defendants were required to treat the Plaintiff's dispute as a bona fide dispute and promptly notify the furnisher of the dispute and all relevant information within five business days.

157.  Instead, Defendants responded to the Plaintiff that he had to complete a proprietary form.

158.  Defendants knowingly or recklessly implemented and followed the procedure to delay or deny the Plaintiff's right to have the furnisher of the disputed information conduct a reasonable investigation in order to save money for itself.

159.  Defendants were on actual notice that their policy and procedure violated the FCRA yet chose to implement the illegal policy anyway.

160.  Defendants conduct injured the Plaintiff and the putative class by depriving them of their right to a prompt, reasonable investigation by the furnisher.

161.  Defendants conduct was willful because it was in direct contravention of the express requirements of the FCRA, as well as FTC and CFPB guidance.

162.  Defendants are liable to the Plaintiff and putative class for statutory damages of between $100-1000 for each occasion on which Defendants failed to promptly forward the Plaintiff and class members disputes to the furnisher of the disputed information.

163.  Defendants are liable for punitive damages, which are uncapped, for their willful violations.

164.  In the alternative, Defendants are liable to Plaintiff and the putative class for its negligent violations of the statute, entitling them to actual damages.

165.  Defendants are liable to the Plaintiff and the putative class for reasonable attorneys' fees and costs.

**COUNT III**
**Violation of 15 U.S.C. 1681e(b)**
**Individual Claim for failure to follow reasonable procedures to assure maximum possible accuracy**
**Against All Defendants**

166.  Plaintiff relies on the foregoing factual allegations that form the basis of the complaint against Defendants for violation of their duties to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report.

167.  Defendants' unreasonably deficient procedures allowed them to incorrectly report outdated and inaccurate criminal records, such as the sex offender records in this case, on consumer reports concerning Plaintiff.

168.  Defendants' failure to follow reasonable procedures while preparing and distributing Plaintiff's consumer information caused Plaintiff's injuries resulting in actual damages including loss of housing, lost time, labor, loss of money, physical injuries and sickness as a result of emotional distress and mental anguish, damage to his reputation, ridicule and humiliation, as described herein.

169.  Defendants' violations of the FCRA were willful in reckless disregard of Plaintiff's rights as a consumer, entitling the Plaintiff to actual, statutory and punitive damages.

170.    Defendants' conduct put the Plaintiff at great risk of injury due to their practices of gathering, compiling and disbursing consumer reports that contain criminal record and sex offender consumer information that is not available in public records.

171.    In the alternative, the Defendants' conduct was negligent, entitling Plaintiff to actual damages.

172.    Accordingly, Defendants are liable for Plaintiff's reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff and the putative class members demand that this Court enter judgment against Defendants RentGrow Inc., and Yardi System Inc., for the following:

A.    Certifying the Class as described above pursuant to Fed. R. Civ. P.23(b)(3);

B.    Declaration that their FCRA rights were violated by Defendants;

C.    Judgment for statutory and punitive damages for willful Defendants' willful violations of the FCRA;

D.    Judgment for reasonable attorneys' fees and costs, pre-judgment and post-judgment interest at the legal rate; and

E.    Such other relief the Court deems just, equitable, and proper.

F.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 1st day of December 2023,

By: /s/ Jenna Dakroub
Jenna Dakroub, CA # 350170
**CONSUMER ATTORNEYS**
6345 Balboa Boulevard, Suite 247
Encino, CA 91316
T: (602) 807-1525
F: (718) 715-1750
E: jdakroub@consumerattorneys.com

*Attorney for Plaintiff,*
*John Doe*